## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DARRIN DICKERS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ONEBEACON INSURANCE GROUP, LTD., T. MICHAEL MILLER, LOWNDES A. SMITH, REID T. CAMPBELL, MORGAN W. DAVIS, LOIS W. GRADY, IRA H. MALIS, G. MANNING ROUNTREE, PATRICK A. THIELE, and KENT D. URNESS,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Darrin Dickers ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of OneBeacon Insurance Group, Ltd., ("OneBeacon" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with OneBeacon, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger between OneBeacon and Intact Financial Corporation ("Intact").

2. On May 2, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to

receive $18.10 in cash for each share of OneBeacon stock they own (the "Merger Consideration"), resulting in an approximate total value of $1.7 billion (the "Proposed Merger").

3.   On June 8, 2017, in order to convince OneBeacon shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Definitive Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.   While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading.

5.   In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for the Company; (ii) the valuation analyses performed by the Company's financial advisor, Credit Suisse Securities (USA) LLC ("Credit Suisse"), in support of its fairness opinion; and (iii) the sales process.

6.   The special meeting of OneBeacon shareholders to vote on the Proposed Merger is scheduled for July 18, 2017.  It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights, or alternatively opt for appraisal of their shares.

7.   For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100.   Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed

Merger unless and until the material information discussed below is disclosed to OneBeacon shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.   This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.   Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; (ii) OneBeacon maintains its United States corporate headquarters in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

11. Plaintiff is, and at all relevant times has been, an OneBeacon shareholder.

12. Defendant OneBeacon is an exempted Bermuda limited liability company located at

26 Reid Street, Hamilton HM 11, Bermuda. Its United States corporate headquarters are located at 605 Highway 169 North, Suite 800, Plymouth, Minnesota 55441.

13. Individual Defendant T. Michael Miller ("Miller") has served as a President, Chief Executive Officer since October 2006, and as director of OneBeacon since August 2006.

14. Individual Defendant Lowndes A. Smith ("Smith") has served as a Chairman of the Board of OneBeacon since October 2006.

15. Individual Defendant Reid T. Campbell ("Campbell") has served as a director of OneBeacon since October 2006.

16. Individual Defendant Morgan W. Davis ("Davis") has served as a director of OneBeacon since 2006.

17. Individual Defendant Lois W. Grady ("Grady") has served as a director of OneBeacon since December 2006.

18. Individual Defendant Ira H. Malis ("Malis") has served as a director of OneBeacon since August 2007.

19. Individual Defendant G. Manning Rountree ("Rountree") has served as a director of OneBeacon since March 2017.

20. Individual Defendant Patrick A. Thiele ("Douglas") has served as a director of OneBeacon since February 2014.

21. Individual Defendant Kent D. Urness ("Urness") has served as a director of OneBeacon since February 2007.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of OneBeacon (the "Class"). Excluded from the Class are

Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of June 7, 2017, there were approximately 22,986,618 shares of Class A OneBeacon common shares outstanding, and 71,754,738 shares of Class B OneBeacon common shares outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.[1] The actual number of public shareholders of OneBeacon will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the

---

[1]    At the special meeting on July 18, 2017, each holder of Class A common shares will be entitled to cast one vote per such share; each holder of Class B common shares will be entitled to cast ten votes per such share. Proxy, 23.

Proposed Merger based on the materially incomplete and misleading Proxy.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**SUBSTANTIVE ALLEGATIONS**

**I.**      **Background of the Proposed Merger**

24. OneBeacon is a specialty property and casualty insurance writer that offers a range of insurance products in the United States, primarily through independent agencies, regional and national brokers, wholesalers and managing general agencies. The Company operates through three segments, including: (i) Specialty Products, (ii) Specialty Industries, and (iii) Investing, Financing and Corporate.

25. In the fall of 2016, OneBeacon's largest majority shareholder, White Mountains Insurance Group, Ltd. ("White Mountains") was contacted by Party A who indicated an interest in exploring a possible transaction with OneBeacon, with proposed consideration to be paid entirely in Party A stock.

26. Shortly thereafter, at a meeting between White Mountains' directors and Individual Defendant Miller, a joint determination was made to start a preliminary review of the Company and to begin initial planning for a potential sale of OneBeacon.

27. Party's A interest terminated in November 2016.

28. On December 13, 2016, following conversations with Credit Suisse, Cravath, Swaine & Moore LLP, and management, the Board determined a sale transaction would maximize shareholder value, and directed the Company's management to commence a formal solicitation process for indications of interest of an acquisition of all of OneBeacon's outstanding equity.

29. Between mid-December 2016 and January 2017, Credit Suisse, at OneBeacon's direction, contacted representatives of seventeen (17) entities identified as potential strategic acquirers, including Intact and Party A. Following such contacts, a draft non-disclosure agreement ("NDA") was sent to thirteen (13) potential acquirers that had indicated interest in exploring a possible transaction with OneBeacon.

30. During that same period, OneBeacon executed NDAs with seven potential acquirers, including Intact. The remaining entities declined to proceed with the process and did not execute NDAs. The Proxy fails to disclose whether these NDAs contained standstill provisions that would preclude a potential acquirer from submitting a superior proposal to the Company.

31. From December 2016 to February 2017, Individual Defendant Miller held meetings with Intact, five other potential acquirers, and Party B, Party C, and Party D.

32. On or about February 13, 2017 through April 13, 2017, OneBeacon fielded indications of interest, exchanged drafts of merger and voting agreements, and progressed through various stages of acquisition negotiations with Party B, Party C, Party D and Intact. Ultimately, Party B, Party C and Party D respectively informed the Company that they had decided against an acquisition.

33. After several exchanges, on April 14, 2017, Intact agreed to an increased purchase price from its original offer, subject to the following conditions: (i) OneBeacon must agree to a certain termination fee and expense reimbursement; (ii) OneBeacon could terminate the Proposed Merger to pursue a superior proposal only if they concurrently paid a termination fee equal to 5.0 percent of OneBeacon's equity value; and (iii) OneBeacon would reimburse Intact's expenses up to a cap of 1.0 percent of the Company's equity value, as well as those expenses related to certain transactions up to a cap of $5.0 million.

34. Individual Defendant Miller agreed, with the caveat that OneBeacon would not accept any transaction at a purchase price of less than $18.10 per OneBeacon share.

35. Between April 15, 2017 and May 2, 2017, the terms of the Proposed Merger were negotiated and finalized.

36. On May 2, 2017, the Board unanimously approved the Proposed Merger.

## II.     The Proposed Merger

37. On May 2, 2017, OneBeacon and Intact issued a press release announcing the Proposed Merger, which states in pertinent part:

> HAMILTON, Bermuda, May 2, 2017 – OneBeacon Insurance Group, Ltd. (NYSE: OB) has entered into a definitive merger agreement under which Intact Financial Corporation (TSX: IFC) will acquire all outstanding OneBeacon shares for $18.10 in cash per share. The $18.10 per share acquisition price is 1.65 times OneBeacon's book value per share as of March 31, 2017, and represents a 14% premium to the company's closing stock price on the NYSE of $15.89 as of May

1, 2017 and a 15% premium to the volume weighted average share price over the last 30 days. This represents aggregate cash consideration of approximately $1.7 billion. In addition, OneBeacon debt of approximately $275 million will remain outstanding.

This transaction will create a North American leader in specialty insurance, with over $1.5 billion of annual premiums. Furthermore, it bolsters Intact's Canadian business with new products and cross-border capabilities, and better positions the company to compete with North American insurers.

Mike Miller, CEO of OneBeacon, said, "We are all very excited to join the Intact family. The opportunity to leverage Intact's deep technical, financial and technology capabilities makes this combination the perfect next step in the OneBeacon journey. Together, we will accelerate our pursuit in creating a leading specialty insurer in North America. We look forward to working with our U.S. and Canadian independent agents and brokers to deliver market-leading capabilities to our targeted customers. Both companies are dedicated to ensuring a seamless transition and look forward to profitably growing our specialty portfolio going forward."

Charles Brindamour, CEO of Intact, said, "Today, we've taken an important step in building a world-class P&C insurer. The addition of OneBeacon is creating a leading North American specialty lines insurer focused on small-to-midsize businesses. OneBeacon is a strong strategic fit for Intact, with deep expertise in commercial and specialty lines, and shared values. We see significant growth potential from the combination of our specialty lines operations and we look forward to welcoming OneBeacon employees to the Intact family."

OneBeacon was formed in 2001 when White Mountains Insurance Group, Ltd. acquired the former CGU's U.S. property-casualty business from Aviva plc. In 2006, White Mountains sold 27.6 million of OneBeacon's common shares in an initial public offering, or 27.6% of OneBeacon's common shares at the time of the initial public offering. As of May 2, 2017, White Mountains owned 75.7% of OneBeacon's common shares, representing 96.9% of the voting power. White Mountains has agreed to vote in favor of the transaction.

The transaction, which was unanimously approved by OneBeacon's board of directors, is subject to regulatory and shareholder approvals and other customary closing conditions, and is expected to close in the fourth quarter of this year. OneBeacon expects to continue paying regular quarterly dividends consistent with past practice prior to closing. Completion of the merger is not subject to any financing conditions.

III.    **The Merger Consideration Appears Inadequate in Light of OneBeacon's Recent Financial Performance and Growth Prospects**

38. The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. Indeed, in the fourth fiscal quarter of 2016, the Company reported a book value per share of $10.82, reflecting an increase of 0.9% for the fourth quarter and 11.1% for the year ended December 31, 2016, including dividends. In a February 2017 press release, Individual Miller stated:

> We are pleased to have delivered solid 11% growth in book value per share in 2016. Investment results reflect the benefits of our short-duration fixed-maturity portfolio in a rising interest rate environment and a decent lift from our allocation to risk assets. Underwriting results reflect the strong performance of our portfolio of specialty businesses. Going into 2017, we are positioned to continue delivering good underwriting results across our diverse portfolio of businesses.

39. Individual Defendant Miller's expectations were well founded, as the Company reported book value per share of $10.91, reflecting an increase of 2.8% for the first quarter of 2017, including dividends. In a May 2, 2017 press release, Individual Defendant Miller stated:

> The year is off to a good start, with 2.8% growth in book value per share, a 95% combined ratio and solid investment returns. Most of our businesses delivered strong results, from both a top-line and bottom-line perspective. While overall net written premiums were down 8% compared to last year, that variance was driven by risk-selection refinement in our Programs, Entertainment and Healthcare businesses. In the remainder of our businesses, net written premiums were up 3%. While market conditions remain competitive, our positive first-quarter momentum positions us well for the balance of the year.

40. In sum, it appears that OneBeacon is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

### IV.   The Materially Incomplete and Misleading Proxy

41. On June 8, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

42. First, the Proxy fails to provide material information concerning the Company's and OneBeacon's financial projections. Specifically, the Proxy provides non-GAAP (generally accepted accounting principles) metrics but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

43. The Proxy disclosure of the Company's projected estimated distributable cash flows to stockholders. However, this conclusory disclosure is misleading, as the Proxy fails to disclose the amount of capital required by the "Best's Capital Adequacy Ratio" plus an estimated safety margin that were that was used to calculate the estimated distributable cash flows contemplated by the projections. The Proxy also fails to disclose why the management's forecasts contained the projected distributable cash flows, while the alternative growth case omitted those same cash flows.

44. Many exploration and production companies present non-GAAP financial measures such as earnings before interest, taxes, depreciation, amortization and exploration expenses (EBITDAX), and adjusted versions of EBITDAX. For yield-generating midstream master

limited partnerships ("MLPs"), distributable cash flow tends to be an important non-GAAP financial measure. In order to make the projections for OneBeacon included on pages 49-50 of the Proxy materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

45. As elaborated below, the Proxy fails to disclose and reconcile the Company's projected accumulated other comprehensive income ("AOCI"). AOCI is a balance sheet line item found in the shareholder's equity section, which reflects unrealized gains and losses of certain investments made by a company. AOCI is commonly found on the balance sheets of financial services and insurance companies due to regular investment activities. Because gains and losses cannot be reflected as income (loss), and ultimately retained earnings, until it is realized, companies are permitted to reflect theses unrealized gains and losses on their balance sheet. Due to the nature of unrealized gains and losses, a company's AOCI changes regularly and is directly affected by market volatility.

46. The Company's failure to disclose and reconcile AOCI is a false and misleading omission because: (i) the Company historically reports this figure in their Form 10-Ks to the SEC, and (ii) Credit Suisse specifically relied upon the Company's AOCI in the calculation of their Selected Public Companies Analysis.

47. When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

48. Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders. The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as OneBeacon and Intact included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

49. Throughout the last year, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[3] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[3] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

non-GAAP financial measures that demonstrate the SEC's tightening policy.[4]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

50. At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, the Defendants acknowledge that disclosing non-GAAP projections may mislead shareholders in the Proxy: "Certain of the financial projections and forecasts set forth below may be considered non-GAAP financial measures. Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used in the financial projections and forecasts set below may not be comparable to similarly titled amounts used by other companies or persons." Proxy, 48.

51. The Proxy also omits certain key inputs necessary for shareholders to assess the valuation analyses performed by Credit Suisse in support of their fairness opinions, rendering the summaries of such analyses in the Proxy incomplete and misleading.

52. With respect to Credit Suisse's Dividend Discount Analysis, the Proxy fails to accurately disclose the estimated present value of the distributable cash flows that OneBeacon was forecasted to generate during the fiscal years ending December 31, 2017 through the fiscal year ending December 31, 2022, excluding dividends paid by OneBeacon during the first quarter of fiscal year 2017. The bald reference to distributable cash flows as contained in the Company's projections is misleading in light of the allegation contained *supra* ¶ 43. The Proxy also fails to

---

[4] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

disclose: (i) the inputs and assumptions underlying the range of discount rates of 5.0% to 7.5%;
(ii) Credit Suisse's rationale for applying book value multiples ranging from 1.30x to 1.70x; and
(iii) the implied perpetuity growth rates resulting from the analysis. This information is material
to OneBeacon shareholders, and its omission renders the summary of Credit Suisse's Dividend
Discount Analysis incomplete and misleading.

53. With respect to Credit Suisse Selected Public Companies Analysis, the Proxy fails to
disclose the Company's AOCI as reviewed by Credit Suisse. The failure to disclose this crucial
line item renders the summary on pages 43-44 of the Proxy false and misleading.

54. Lastly, the Proxy states that the Company entered into several NDAs with seven
potential acquirers, including Intact, between December 2016 and January 2017. Proxy, 31.
Descriptions concerning the material terms of these NDAs, however, are absent from the Proxy.
Notably, the Proxy fails to disclose whether or not the NDAs contained standstill provisions and,
if so, whether the standstill provisions had "don't-ask-don't-waive" provisions and/or sunset
provisions, or whether the counterparties could seek a waiver of such standstills to make an
unsolicited offer to acquire the Company. The omission of this information leaves shareholders
guessing whether a superior offer is precluded from the Company's consideration.

55. In sum, the omission of the above-referenced information renders statements in the
Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent
disclosure of the foregoing material information prior to the special shareholder meeting to vote
on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a
fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are
thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

56. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

58. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

59. SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable

method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a). As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

60. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

61. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for the Company; (ii) the valuation analyses performed by the Credit Suisse, in support of its fairness opinions; and (iii) the sales process.

62. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

63. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Credit Suisse reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by

Credit Suisse as well as its fairness opinion and the assumptions made and matters considered in connection therewith.

64. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review Credit Suisse's analyses in connection with their receipt of the fairness opinion, question Credit Suisse as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

65. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

66. OneBeacon is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

67. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

68. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of

this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

69. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

70. The Individual Defendants acted as controlling persons of OneBeacon within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of OneBeacon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

71. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They

were thus directly involved in preparing this document.

73. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

74. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

76. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed

Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.      Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 13, 2017

Respectfully submitted,

ALTMAN & IZEK

By: /s/ Adam Altman
Douglas B. Altman (13854X)
Adam M. Altman (0393515)
901 North Third Street, Suite 140
Minneapolis, MN 55401
Telephone: (612) 335-3700
Fax: (612) 335-3701

*Attorneys for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr. (*pro hac* forthcoming)
Nadeem Faruqi
685 Third Avenue, 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: nfaruqi@faruqilaw.com
jwilson@faruqilaw.com
*Attorneys for Plaintiff*

# CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Darrin Dickers ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against OneBeacon Insurance Group, Ltd. ("OneBeacon") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in OneBeacon securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 12th day of June 2017.

Darrin Dickers

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 06/01/16 | 200 |
| | | |
| | | |
| | | |